**AKERMAN LLP**
ALICIA Y. HOU (SBN 254157)
E-mail: alicia.hou@akerman.com
HALEY C. GREENBERG (SBN 307475)
E-mail: haley.greenberg@akerman.com
601 W. Fifth Street, Suite 300
Los Angeles, CA 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

**P.C.WOO & ZHONGLUN W.D. LLP**
JIE LIAN (SBN 273146)
19th Floor, Times Financial Center
4001 Shennan Avenue
Futian District, Shenzhen, PR China 518048
Telephone: (+86) 1360 115 9239
Facsimile: (+86 755) 8831 9191
E-Mail: lianjie@zlwd.com

Attorneys for Plaintiff
800 COLUMBIA PROJECT COMPANY, LLC

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

800 COLUMBIA PROJECT COMPANY, LLC, a Washington limited liability company;

Plaintiff,

v.

CMB WING LUNG BANK, LTD., a Hong Kong bank doing business in California; and DOES 1 to 100, inclusive;

Defendant.

Case No. 8:21-cv-00278-JLS-ADS

[Assigned to the Hon. Josephine L. Staton]

**FIRST AMENDED COMPLAINT FOR:**

**(1) FRAUD (PROMISSORY FRAUD)**
**(2) FRAUD (INTENTIONAL/NEGLIGENT MISREPRESENTATION)**
**(3) VIOLATION OF CAL. COMMERCIAL CODE § 11201, ET SEQ.;**
**(4) VIOLATION OF CAL. COMMERCIAL CODE § 11202(b)(ii);**
**(5) NEGLIGENCE**

**DEMAND FOR JURY TRIAL**

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Pursuant to Federal Rule of Civil Procedure Rule 15(a)(1)(B), Plaintiff 800 Columbia Project, LLC (**Plaintiff**), a Washington limited liability company, for its first amended complaint (**FAC**) against defendant CMB Wing Lung Bank, Ltd., (**Defendant** or **Bank**) alleges as follows:

## I. PARTIES

1. Plaintiff is a limited liability company, registered in the State of Washington, located at 2401 Utah Avenue South, Suite 305, Seattle, Washington, 98134. Plaintiff is the owner of a real estate development located in Seattle, Washington (**Development**).

2. Defendant CMB Bank Wing Lung Bank, Ltd. is a Hong Kong Bank doing business in Orange County, California through a branch located at 520 Newport Center Drive, Suite 1600, Newport Beach, California.

3. Plaintiff is not aware of the true names or capacities, whether individual, corporate, associate or otherwise, of defendants sued herein as Does 1 through 10, inclusive, or any of them, and therefore sues said defendants by such fictitious names, and prays that their names and capacities, when ascertained, may be incorporated herein by appropriate amendment hereto.

4. Plaintiff is informed and believes and based thereon alleges, that at all times herein mentioned, each of the defendants was the agent, servant, representative, alter ego, and/or employee of each of the other defendants, and in doing the things hereinafter mentioned, was acting within the course and scope of his or its authority as such agent, representative, servant and/or employee, with the ratification and consent of each of the other co-defendants, respectively.

## II. JURISDICTION AND VENUE

5. This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. § 1332 and diversity of citizenship, with an amount in controversy in excess of $75,000.00, exclusive of interest and costs.

6. This Court has diversity of citizenship jurisdiction because Plaintiff is domiciled in the state of Washington, while Defendant is an individual domiciled in Hong Kong and doing business in California.

7. This Court has jurisdiction over the Defendant named herein because Defendant does business in the state of California and has sufficient minimum contacts within this district so that to render the exercise of jurisdiction by the courts of this district permissible under traditional notion of fair play and substantial justice.

8. Venue in this district satisfies the requirements of 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III. FACTUAL ALLEGATIONS

### A. General background.

9. This action arises out of Defendant's complete failure to implement commercially reasonable methods of providing security against unauthorized wire payment orders. As a result of Defendant's failure, Plaintiff has suffered a loss of over 6 million dollars, which amount Defendant refuses to refund to Plaintiff despite a clear requirement to do so under California's Commercial Code. By this lawsuit, Plaintiff seeks to recover its losses.

10. On July 26, 2019, Plaintiff opened a checking account with Defendant, at Defendant's Newport Beach location, to hold funds for operating expenses in connection with the Development (**Account**).

11. Upon opening its checking account with Defendant, Plaintiff received a document entitled "CMB Wing Lung Bank U.S. Branch Account Opening Disclosures & Notices (Customer Copy)" (**Account Disclosure**). The Account Disclosure specifies that Defendant shall comply with the standards set forth in applicable Federal laws and regulations. The Account Disclosure also provides that Plaintiff's account "will be governed by the law of the State of California."

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

12. Plaintiff used Defendant's wire transfer service to pay certain operating expenses related to the Development, such as payments to its vendors (e.g., its general contractor and insurance carrier).

**B. Defendant's representations regarding their security procedures.**

13. Defendant made representations concerning their payment order protocol to Plaintiff—leading Plaintiff to think Defendant had implemented commercially reasonable security practices and inducing Plaintiff to choose to bank and/or continue to bank with Defendant. Plaintiff relied on Defendant's representations, which included without limitation:

a. Representations included in the Account Disclosure, which was transmitted by Ms. Tong to Plaintiff, on or about July 26, 2019. The Account Disclosure stated Defendant was subject to the standards set forth in applicable anti-money laundering laws and federal and state regulations.

b. An August 21, 2019 e-mail from Defendant to Plaintiff, wherein Ms. Tong set forth the Bank's security procedures for making wire transfers outside the United States. In an e-mail to Ms. Liang, Ms. Tong stated that for a wire payment to be made to a Chinese entity, the Bank "will need supporting document to explain the relationship between [Plaintiff] and this China entity, as well as what service it provides to the project, according to bank's KYC (Know-Your-Customer) and compliance requirements." A true and correct copy of Ms. Tong's August 21, 2019 e-mail is attached as **Exhibit A** and incorporated into the FAC by this reference.

14. Plaintiff reasonably relied on Defendant's representations concerning their security procedures in choosing and continuing to use Defendant for its banking needs.

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

15. Defendant, however, failed to implement, maintain, and/or enforce the security procedures they claimed to have in place when executing Plaintiff's payment orders for wire transfers.

16. Specifically, and without limitation, Defendant's security procedures failed to detect common forms of phishing, forged signatures and fake e-mail accounts designed to impersonate account holders without said account holder's knowledge. Defendant also failed to verify the business relationships between an account holder and foreign payees/beneficiaries of wire transfers, failed to verify unauthorized changes of payee/beneficiary information, and failed to detect irregularities and red flags indicating fraud and unlawful activities.

17. As a result of Defendant's failures, omissions, and conduct, an unknown unauthorized third-party (**scammer**) was able to make three fraudulent transfers in January 2020 from Plaintiff's Account to unknown overseas Hong Kong bank accounts in the total amount of $5,697,724.42.

**C. The parties' wire payment order process.**

18. To initiate a payment order, Plaintiff was required to fill out a "remittance application" provided by Defendant. A true and correct copy of a blank remittance application is attached as **Exhibit B** and incorporated into the FAC by this reference.

19. When it came time for Plaintiff to submit a payment order, one of Plaintiff's finance managers, Dong Liang a/k/a Kay Liang, would print out a blank remittance application, fill in payment information in handwriting, sign the completed remittance form, and then e-mail a scanned copy of her signed application to plaintiff's other finance manager, Robert (Bob) Beeson for countersigning.

20. Upon receipt of Ms. Liang's signed remittance form, Mr. Beeson would print out the scanned remittance form signed by Ms. Liang, countersign the printed form, scan the double-signed form, and then e-mail the completed form to Defendant's

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

authorized representative Shasha Tong for processing. At all relevant times herein, Ms. Tong worked at Defendant's Newport Beach location. Plaintiff would submit all payment orders by e-mail to Ms. Tong.

21. Between the account opening until January 2020 (when the subject fraudulent wire payment orders took place), Defendant had been processing Plaintiff's wire transfers to vendors on a regular basis without incident. Due to Defendant's routine and regular processing of the wire transfers, Defendant was or should have been familiar with Plaintiff's payment practices, including Plaintiff's regular payees and payment beneficiaries.

**D. The scammer hacks Mr. Beeson's e-mail account.**

22. Plaintiff is informed, believes, and thereupon alleges that the scammer gained unauthorized access to Mr. Beeson's work e-mail account (**Beeson E-mail Account**) through unknown means from an unknown location at an unknown time.

23. The scammer impersonated Mr. Beeson and sent fake e-mails impersonating other of Plaintiff's employees, in a common hacking process known as phishing. The scammer also used forged signatures on remittance applications.

**F. The fraudulent transfers.**

24. In January 2020, due to Defendant's failure to implement a commercially reasonable method of providing security against unauthorized payment orders, three unauthorized wire transfers totaling $5,697,724.42 were made from Plaintiff's Account to overseas bank accounts held by foreign companies wholly unknown and unrelated to Plaintiff.

<u>First Fraudulent Wire Transfer</u>

25. The scammer first targeted Plaintiff's insurance premium payment of $107,590.93 (**First Payment**) for January 2020 payable to its insurance carrier, First Insurance Funding Corp., located in Northbrook, Illinois.

26. On January 14, 2020, Ms. Liang prepared and signed the remittance

application in accordance with Plaintiff's customary procedure as outlined above. First, she printed out an empty application form, handwrote the requested information including amount and beneficiary, and signed the original physical copy. Then, that same day, Ms. Liang e-mailed a scanned copy of the signed application to Mr. Beeson for countersigning, copying Defendant's representative, Ms. Tong, on the e-mail.

27. That same day, Mr. Beeson—in accordance with the customary procedure outlined above—printed out the remittance application that had been signed by Ms. Liang, counter-signed, scanned the double-signed application, and sent the scanned copy to Ms. Tong for processing.

28. On January 15, 2020, after Mr. Beeson e-mailed the double-signed remittance application to Defendant's representative Ms. Tong, the scammer e-mailed Ms. Tong from the Beeson E-mail Account without Mr. Beeson's knowledge.

29. Impersonating Mr. Beeson, the scammer directed Ms. Tong to change the beneficiary of the wire transfer advising Ms. Tong as follows:

> Please don't wire to the Lake Forest Bank and Trust tomorrow. There's issues we need to settle with IRS and funds can't go through to the account at the moment. You will have to wire the funds to company offshore bank account details below and send wire copy as soon as it's done tomorrow.

30. The scammer then instructed Ms. Tong to make the payment to a foreign bank account held by a trading company in Hong Kong named Chengfang Trade Limited. Chengfang Trade is a third party with no business relationship with Plaintiff whatsoever.

31. Plaintiff had never requested an overseas wire transfer—all of the dozens of wires that Ms. Tong had previously processed had been payments to domestic companies with obvious relationships to Plaintiff, such as Plaintiff's general contractor or insurance carrier. Despite the abnormal request, Ms. Tong responded to the

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Scammer's January 15 e-mail that same day, agreeing to change the beneficiary for the payment order without any further investigation. She simply advised:

> Well understood Bob. I'll cancel the scheduled wire now. To initialize the new wire to the new beneficiary in your email below, could you please kindly send me another remittance application form with the new beneficiary information and signed by you and Kay/Jessie? If it's not easy to contact Kay today, you can try to have Jessie sign the form tonight. We'll process the wire tomorrow as long as we can receive the signed new remittance application form by early tomorrow morning.

32. Importantly, Ms. Tong did not implement the security protocols as agreed to by the parties and as outlined in Ms. Tong's August 21, 2019 e-mail to Plaintiff. (*See* **Exhibit A**, Ms. Tong stating the Bank "will need supporting document to explain the relationship between [Plaintiff] and this China entity, as well as what service it provides to the project.)

33. The scammer then sent to Ms. Tong via the Beeson E-mail Account a forged remittance application with the forged signatures of Ms. Liang and Mr. Beeson requesting the First Payment be sent to Chengfang Trade.

34. Even a cursory examination of the appearance of the forged remittance application indicates that the scammer cut and pasted the signatures from a prior remittance application obtained from the Beeson E-mail Account. Other red flags included that the forged remittance application was typed, rather than handwritten (as was Plaintiff's customary procedure), and that fake e-mail addresses for Ms. Liang and Ms. Chen were copied to the e-mail.

35. Defendant ignored its internal control policies and compliance protocol, which the parties had agreed to via email on August 21, 2019 and by their course of conduct. Defendant failed to verify a business relationship between Plaintiff and the fraudulent beneficiary or whether the beneficiary had provided any services to Plaintiff.

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

36. Defendant also ignored the irregular circumstances surrounding the change of beneficiary. The correct beneficiary of the First Payment was Plaintiff's insurance carrier, First Insurance Funding Corp., an insurance company in Illinois. The fraudulent beneficiary used by the Scammer, however, was a foreign entity in Hong Kong. Defendant had been processing Plaintiff's payments to vendors on a regular basis and was familiar with Plaintiff's payment practices and regular beneficiaries. In fact Tong had processed numerous transactions to Plaintiff's same Illinois insurance carrier.

37. Defendant ignored and/or failed to detect these red flags. Defendant never verified the change of beneficiary with Plaintiff by any means, and instead caused the First Payment to be made to Chengfeng Trade on or about January 15, 2020.

Second Fraudulent Wire Transfer

38. Just two days later, on January 17, 2020, the scammer targeted Plaintiff's payment in the amount of $5,090,133.49 to its general contractor, Turner Construction (**Second Payment**). Turner Construction is a construction contractor located in Seattle, Washington.

39. That day, on January 17, 2020 at 6:36 a.m., Ms. Liang e-mailed Mr. Beeson and Ms. Tong a remittance form for payment to Turner Construction in the amount of $5,090,133.49. Plaintiff prepared and transmitted the remittance form in accordance with Plaintiff's customary procedure.

40. Two hours later, at 8:33 a.m., the scammer used a fake e-mail address pretending to be Ms. Liang to send an e-mail to Ms. Tong stating yet again that the payee needed to be changed. This fake remittance form revised the beneficiary from Turner Construction to Guoy Trade Limited, with a bank account in Hong Kong. Guoy Trade was a third-party in Hong Kong that had no business relationship with Plaintiff whatsoever. Before January 15, 2020, Defendant had never received any

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

request for funds to be wired off shore. Ms. Tong had now, however, received two such requests in two days to companies in China with no apparent relationships to Plaintiffs.

41. As was the case with the First Payment, even a cursory examination of the appearance of the forged remittance application indicates that the scammer cut and pasted the signatures from a prior remittance application obtained from the Beeson E-mail Account. The same red flags present in the circumstances leading up to the First Payment were present in this instance as well—the forged remittance application was typed, rather than handwritten (as was Plaintiff's customary procedure), and fake e-mail addresses purporting to belong to Ms. Liang and Ms. Chen were copied to the e-mail.

42. Notably, shortly before Defendant made the unauthorized transfer of the Second Payment, Ms. Tong made a brief call to Mr. Beeson that lasted no longer than one minute. During the call, Ms. Tong asked about the payment date, given the occurrence of a public holiday. Although the change in beneficiary to a foreign entity was surely a red flag on its own, Ms. Tong requested no additional information about the payment or change in beneficiary. Mr. Beeson, of course, was under the impression Ms. Tong was inquiring about the payment to Turner Construction. Defendant never verified the accuracy of the payee by any means prior to processing the payment pursuant to the falsified payment instructions.

43. Defendant again ignored its internal control policies and compliance protocol by failing to verify a business relationship between Plaintiff and the fraudulent beneficiary and whether the beneficiary had provided any services to Plaintiff.

44. Defendant again ignored the irregular circumstances surrounding the change of beneficiary. The correct beneficiary of the Second Payment is Plaintiff's general contractor Turner Construction, a construction company located in Seattle,

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Washington. The fraudulent beneficiary used by the scammer, however, is a foreign trading company in Hong Kong. Defendant had been processing Plaintiff's payments to vendors on a regular basis and had been familiar with Plaintiff's payment practices and regular beneficiaries.

45. Defendant ignored and/or failed to detect these red flags. Defendant never verified the change of beneficiary with Plaintiff by any means, and instead caused the Second Payment to be made to Guoy Trade on or about January 17, 2020.

Third Fraudulent Wire Transfer

46. On January 28, 2020, the scammer sent an e-mail to Ms. Tong from the hacked Beeson E-mail Account, attaching a fake remittance form bearing forged signatures of both Ms. Liang and Mr. Beeson. Again, an ordinary examination of the forged signatures shows that the forged signatures were cut and pasted by the Scammer from prior application forms. Defendants again failed to detect the fake e-mails that were red flags for wire fraud.

47. This time, the fake remittance application directed Defendant to make a payment of $500,000 for "Balance General Contractor Fee" to a bank account in Hong Kong held by Guoy Trade (**Third Payment**). This was the third suspicious transfer to an unknown business in China in less than two weeks. Yet Defendant failed to detect the forgery and transferred the Third Payment to Guoy Trade based on the forged remittance form.

48. Defendant ignored their internal control policies and compliance protocols in sending a payment to an overseas account without verifying the business relationships between Plaintiff and the fraudulent beneficiary or services it had provided to Plaintiff.

49. Defendant had been processing Plaintiff's payments to vendors on a regular basis and was familiar with Plaintiff's monthly paying practice and regular

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

beneficiaries. It would have been nonsensical to make a general contractor payment to a trading company in Hong Kong that had no business relationship with Plaintiff.

50. Defendant ignored and/or failed to detect these red flags and instead caused the Third Payment to be made to Guoy Trade on or about January 28, 2020.

**G. Plaintiff formally objects to the fraudulent payments.**

51. Reasonably relying on Defendant's representative Ms. Tong's misrepresentation that no wire transfer would be made to foreign beneficiaries without first receiving documents from Plaintiff verifying the beneficiary's business relationship with Plaintiff and the services provided by the beneficiary, Plaintiff did not discover the fraudulent transfers until January 28, 2020, when a vendor notified Plaintiff about the vendor's failure to receive payment.

52. On or about January 28, 2020, Plaintiff notified Defendant via multiple means about the three fraudulent wire transfers. Specifically, Plaintiff's employees communicated with Ms. Tong by telephone regarding specific facts of the three payments by phone. Plaintiff's employees also sent Ms. Tong e-mails and text messages apprising Ms. Tong of Plaintiff's discovery of the fraudulent transfers.

53. On or about January 29, 2020, Plaintiff provided Defendant with a detailed written statement describing the details of the fraudulent payments.

54. On April 8, 2020, Plaintiff's counsel e-mailed Defendant's counsel an Objection to the Payments in connection with the three unauthorized remittance transfers. The Objection expressly stated that Plaintiff objected to what the bank had done in accepting the payment orders and considered Defendant liable for Plaintiff's loss. Plaintiff also clearly notified Defendant that it intended to seek damages against the Defendants in said letter. A true and correct copy of the April 8, 2020 objection letter is attached as **Exhibit C** and incorporated into the FAC by this reference.

**H. Defendant's failure to investigate and assist in recovering the stolen funds.**

55. Plaintiff is informed, believes, and thereupon alleges that, Defendant

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

failed to reasonably investigate the fraud; instead, Defendant instructed Plaintiff to retain investigators to conduct necessary investigations. Sufficient investigation is necessary for tracing and recovering the stolen funds. Defendant also failed to reasonably assist Plaintiff to trace and recover the stolen funds.

56. As a result, Plaintiff has suffered substantial damages in addition to the stolen funds and the interests thereof, including but not limited to costs and legal fees incurred in investigating the fraud and in tracing and recovering the stolen funds.

**FIRST CAUSE OF ACTION**

**Fraud (Promissory Fraud)**

**(By Plaintiff against Defendant)**

57. Plaintiff incorporates all of the above paragraphs as though fully set forth herein.

58. Defendant made representations of intent to perform specific security procedures before processing wire transfers to overseas accounts.

59. On August 21, 2019, Defendant, through its authorized representative Ms. Tong, made false written statements via e-mail to Ms. Liang regarding the Bank's security protocols for making wire transfers outside the United States. Ms. Tong stated that for a wire payment to be made to a Chinese entity, the Bank "will need supporting document to explain the relationship between [Plaintiff] and this China entity, as well as what service it provides to the project, according to bank's KYC (Know-Your-Customer) and compliance requirements." *See* **Exhibit A**.

60. At the time Defendant made these representations, Defendant did not intend to perform these procedures. Defendant knew its representations to Plaintiff were false and/or Defendant made the representation recklessly and without regard for truth. Defendant intended that Plaintiff rely on the representation as the correspondence makes clear Defendant wanted Plaintiff to believe that Defendant had a reasonable security protocol in place. In fact, the representations were part of a

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

larger effort to induce Plaintiff to continue using Defendant for its banking needs based on Plaintiff's belief that Defendant had reasonable security protocols in place.

61. Defendant's fraudulent conduct was therefore independent from and unrelated to its violations of the commercial code and its failure to follow a commercially reasonable security procedure in processing the fraudulent wire transfers. Plaintiff's fraud claim is not preempted by California Commercial Code Section 11201 et seq.

62. Plaintiff did not know Defendant's representations were false, and reasonably and foreseeably relied on the representations when made. Specifically, it was reasonable for Plaintiff to expect that no wire transfer would be made to foreign beneficiaries without first verifying the beneficiary's business relationship with Plaintiff and the services provided by the beneficiary.

63. As a result, Plaintiff reasonably relied on Defendant's representation by continuing to bank with Defendant including without limitation using Defendant's wire transfer services to pay its vendors.

64. Defendant did not perform the promised acts when it processed the three fraudulent transfers without verifying the recipient's business relationship with Plaintiff.

65. Plaintiff has suffered damages in an amount that is in excess of the minimum jurisdiction of this Court.

66. Defendant's intentional misconduct described herein was carried out with a conscious disregard of Plaintiff's rights, with the intent to unjustly profit at Plaintiff's expense. Such conduct entitles Plaintiff to an award of punitive damages in an amount appropriate to punish or set an example of the offending parties in an amount to be determined at trial.

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**SECOND CAUSE OF ACTION**

**Fraud (Intentional/Negligent Misrepresentation)**

**(By Plaintiff against Defendant)**

67. Plaintiff incorporates all of the above paragraphs as though fully set forth herein.

68. Defendant made representations of intent to perform specific security procedures before processing wire transfers to overseas accounts.

69. Specifically, on August 21, 2019, Defendant, through its authorized representative Ms. Tong, made false written statements via e-mail to Ms. Liang regarding the Bank's security protocols for making wire transfers outside the United States. Ms. Tong stated that for a wire payment to be made to a Chinese entity, the Bank "will need supporting document to explain the relationship between [Plaintiff] and this China entity, as well as what service it provides to the project, according to bank's KYC (Know-Your-Customer) and compliance requirements." *See* **Exhibit A**.

70. At the time Defendant made these representations, Defendant did not intend to perform these procedures. Defendant knew its representations to Plaintiff were false and/or Defendant made the representation recklessly and without regard for truth. Defendant intended that Plaintiff rely on the representation as the correspondence makes clear Defendant wanted Plaintiff to believe that Defendant had a reasonable security protocol in place. In fact, the representations were part of a larger effort to induce Plaintiff to continue using Defendant for its banking needs based on Plaintiff's belief that Defendant had reasonable security protocols in place.

71. Defendant's fraudulent conduct was therefore independent from and unrelated to its violations of the commercial code and its failure to follow a commercially reasonable security procedure in processing the fraudulent wire transfers. Plaintiff's fraud claim is not preempted by California Commercial Code Section 11201 et seq.

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

72. Plaintiff did not know these representations were false, and reasonably and foreseeably relied on the representations when made. Specifically, it was reasonable for Plaintiff to expect that no wire transfer would be made to foreign beneficiaries without first verifying the beneficiary's business relationship with Plaintiff and the services provided by the beneficiary.

73. As a result, Plaintiff reasonably relied on Defendant's representation by continuing to bank with Defendant including without limitation using Defendant's wire transfer services to pay its vendors.

74. Defendant did not perform the promised acts when it processed the three fraudulent transfers without verifying the recipient's business relationship with Plaintiff.

75. Plaintiff has suffered damages in an amount that is in excess of the minimum jurisdiction of this Court.

76. Defendant's intentional misconduct described herein was carried out with a conscious disregard of Plaintiff's rights, with the intent to unjustly profit at Plaintiff's expense. Such conduct entitles Plaintiff to an award of punitive damages in an amount appropriate to punish or set an example of the offending parties in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**

**Violation of California Commercial Code Section 11201 et seq.**

**(By Plaintiff against Defendant)**

77. Plaintiff incorporates all of the above paragraphs as though fully set forth herein.

78. California Commercial Code Section 11201, et. seq. applies to the transactions subject to this complaint because they are wire transfers as defined in Section 11103 of the Commercial Code. Such wire transfers were processed through Fedwire or through a similar wire transfer system that is used primarily between

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

financial institutions or between businesses.

79. Specifically, the First Payment, Second Payment, and Third Payment were wire transfers that are the subject to California Commercial Code:

a. $107,590.93 on or about January 15, 2020.

b. $5,090,133.49 on or about January 17, 2020.

c. 500,000 or about January 28, 2020.

80. Plaintiff is informed and believes and, on that basis, alleges that Defendant failed to maintain commercially reasonable security procedures to verify the identity of the persons requesting the funds to be transferred.

81. Plaintiff are informed and believe and, on that basis, alleges that to the extent Defendant had in place a security procedure, it failed to follow said procedure, including without limitation failing to follow it's the protocol outlined by Ms. Tong in her August 21, 2019 e-mail. *See* **Exhibit A**.

82. Defendant's security procedure was not commercially reasonable because Defendant failed to identify several obvious red flags, including without limitation, (a) Plaintiff never transferred sums to beneficiaries similar to the ones in question; (b) Defendant ignored its internal control policies and compliance protocol by failing to verify a business relationship between Plaintiff and the fraudulent beneficiary and whether the beneficiary had provided any services to Plaintiff; (c) the correct beneficiaries of the three payments were domestic companies, while the changed beneficiaries were foreign entities with foreign bank accounts; (d) Defendant had been processing Plaintiff's payments to vendors on a regular basis and had been familiar with Plaintiff's payment practices and regular beneficiaries—none of which included the fraud sham companies; (e) wholly incorrect e-mail addresses were copied to the e-mails containing payment orders; (f) the suspicious "last minute" change in beneficiaries; and (g) the obviously-forged signatures.

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

83. Plaintiff is informed and believes and, on that basis, alleges that Defendant failed to properly follow reasonable security procedures to identify and authenticate the persons requesting the transactions in question. Plaintiff is informed and believes and, on that basis, alleges that Defendant through its representatives failed to properly authenticate unauthorized individuals, failed to ask authenticating questions to ascertain the identity of the person requesting the transfers at issue.

84. The wire transfers of funds from Plaintiff's Account in the total amount of $5,697,724.42 were thus unauthorized transfers within the meaning of California Commercial Code.

85. Defendant processed said unauthorized wire transfers without Plaintiff's knowledge or consent.

86. Plaintiff is informed and believes, and on such basis alleges, that the fraudulent and unauthorized transfer orders were, and continue to be, unenforceable because they were not caused, directly or indirectly, by Plaintiff, by an agent of Plaintiff, by one who obtained authorized access to the Account, or by one who obtained information facilitating the breach of any "Security Procedure" from the control of Plaintiff or any agent of Plaintiff, pursuant to California Commercial Code Section 11203.

87. Plaintiff notified Defendant of the fact that the transfers were unauthorized within the statutory period defined in California Commercial Code Sections 11505 and 11204 of the Commercial Code. *See* **Exhibit C**.

88. Defendant is obligated to refund said fraudulent wire transfers to Plaintiff under Section 11204 of the Commercial Code. Defendant failed to do so.

89. As a result of Defendant's failure to adhere to statutory requirements and to implement reasonable security procedures used by similarly situated banks and customers, Plaintiff was damaged in the amount of $5,697,724.42 plus interest as allowed by law.

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**FOURTH CAUSE OF ACTION**

**Violation of California Commercial Code Section 11202(b)(ii)**

**(By Plaintiff against Defendant)**

90. Plaintiff incorporates all of the above paragraphs as though fully set forth herein.

91. Defendant was, and is, required to accept and process payment orders in "good faith" as set forth in California Commercial Code Section 11202(b)(ii).

92. Defendant was, and is, required to employ "reasonable commercial standards of fair dealing" in its acceptance and processing of payment orders as set forth in California Commercial Code Section 11202(b)(ii).

93. Defendant did not accept and process the wire transfers at issue in "good faith" when it allowed the three transfers to be processed without following the security protocol outlined in Ms. Tong's August 21, 2019 e-mail.

94. Defendant did not accept and process the wire transfers in "good faith" in it allowed a total of $5,697,724.42 to be transferred over a two-week period to destinations to which Plaintiff had never previously transferred funds and in the presence of the red flags detailed above.

95. Defendant did not employ "reasonable commercial standards of fair dealing" in its acceptance and processing of the wire transfers as required under California Commercial Code section 11202. Defendant is therefore required to refund the full amount of the three unauthorized orders, plus interest as allowed by law.

**FIFTH CAUSE OF ACTION**

**Negligence**

**(By Plaintiff against Defendant)**

96. Plaintiff incorporates all of the above paragraphs as though fully set forth herein.

97. Defendant owed a duty of care to Plaintiff, including a duty to investigate potential criminal activity conducted in or through Defendant bank accounts and to work with fraud victims to investigate and remedy the fraud as soon as it receives notification of said fraud.

a. failing to receive, transmit, keep, maintain, handle, and store customers' sensitive information with due care; and

b. failing to design, set, install, operate, maintain, and secure its information systems, including electronic information system and physical documentations and things, with due care which enabled the scammer to access, copy, read, or otherwise obtain customers' sensitive information.

98. On or about January 28, 2020, Plaintiff notified Defendant via multiple means about the three fraudulent wire transfers.

99. Defendant acted negligently after learning of the commission of the fraud by, among other things, failing to diligently investigate, report, locate, or facilitate the investigation to locate the transferred funds. Defendant also acted negligently after learning of the commission of the fraud by failing to inform Plaintiff to whom the funds were wired and the procedures and processes for obtaining return of the fraudulently transferred funds.

100. Plaintiff is informed, believes, and thereupon alleges that, Defendant failed to reasonably investigate the fraud; instead, Defendant instructed Plaintiff to retain investigators to conduct necessary investigations. Sufficient investigation is necessary for tracing and recovering the stolen funds. Defendant also failed to reasonably assist Plaintiff to trace and recover the stolen funds.

101. Defendant breached its duty by negligently failing and/or refusing to provide necessary information so that Plaintiff may be made whole.

102. Defendant's negligence after learning of the commission of the fraud caused Plaintiff significant harm.

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

103. Defendant also breached the duty of care it owed Plaintiff by failing to: put in place policies and procedures to safeguard the funds Plaintiff had entrusted to it, adequately train and/or supervise its employees, agents, directors, and officers in their dealings with Plaintiff and Plaintiff's account, verify or corroborate the distributions/disbursements made from Plaintiff's account, and intervene and prevent unauthorized and wrongful transfers from Plaintiff's account.

104. Defendant also failed to receive, transmit, keep, maintain, handle, and store customers' sensitive information with due care. It did not design, set, install, operate, maintain, and secure its information systems, including electronic information system and physical documentations and things, with due care which enabled the scammer to access, copy, read, or otherwise obtain customers' sensitive information.

105. Defendant's negligent conduct was therefore independent from and unrelated to its violations of the commercial code and its failure to follow a commercially reasonable security procedure in processing the fraudulent wire transfers. Plaintiff's negligence claim is not preempted by California Commercial Code Section 11201 et seq.

106. Defendant's above negligent acts were substantial factors in causing Plaintiff's harm.

107. Plaintiff has suffered and continues to suffer damages in an amount not less than $5,697,724.42, and additional amounts according to proof.

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against Defendant, as follows:

**On the First Cause of Action:**

1. For compensatory damages in the sum of $5,697,724.42;
2. For prejudgment interest at the legal rate of ten percent (10%) per annum;
3. For punitive damages in an amount to be proven at trial;
4. For costs of suit; and

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

5. For such other and further relief that the court shall deem just and proper.

**On the Second Cause of Action:**

1. For compensatory damages in the sum of $5,697,724.42;
2. For prejudgment interest at the legal rate of ten percent (10%) per annum;
3. For costs of suit; and
4. For such other and further relief as the court may deem proper.

**On the Third Cause of Action:**

1. For compensatory damages in the sum of $5,697,724.42;
2. For prejudgment interest at the legal rate of ten percent (10%) per annum;
3. For costs of suit; and
4. For such other and further relief as the court may deem proper.

**On the Fourth Cause of Action:**

1. For compensatory damages in the sum of $5,697,724.42;
2. For prejudgment interest at the legal rate of ten percent (10%) per annum;
3. For costs of suit; and
4. For such other and further relief as the court may deem proper.

**On the Fifth Cause of Action:**

1. For compensatory damages in the sum of $5,697,724.42;
2. For prejudgment interest at the legal rate of ten percent (10%) per annum;
3. For costs of suit; and
4. For such other and further relief as the court may deem proper.

**On All Causes of Action:**

1. For actual damages according to proof on each cause of action for which such damages are available;
2. For special damages, according to proof on each cause of action for which such damages are available;
3. For compensatory damages, according to proof on each cause of action

for which such damages are available;

4. For restitution according to proof on each cause of action for which such damages are available;

5. For exemplary and punitive damages according to proof on each cause of action for which such damages are available;

6. For declaratory and injunctive relief, as appropriate;

7. For reasonable attorney's fees incurred in this action as allowed by law;

8. For costs of suit incurred in this action; and

9. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

Dated: April 20, 2021

**AKERMAN LLP**

By: */s/ Alicia Y. Hou*
Alicia Y. Hou
Haley C. Greenberg
Attorneys for Plaintiff 800 Columbia Project, LLC

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342