**AKERMAN LLP**
ELLEN S. ROBBINS (SBN 298044)
E-mail: ellen.robbins@akerman.com
ALICIA Y. HOU (SBN 254157)
E-mail: alicia.hou@akerman.com
JONATHAN M. TURNER (SBN 320614)
Email: jonathan.turner@akerman.com
601 W. Fifth Street, Suite 300
Los Angeles, CA 90071
Telephone: (213) 688-9500
Facsimile:  (213) 627-6342

**P.C.WOO & ZHONGLUN W.D. LLP**
JIE LIAN (SBN 273146)
19th Floor, Times Financial Center
4001 Shennan Avenue
Futian District, Shenzhen, PR China 518048
Telephone:  (+86) 1360 115 9239
Facsimile:  (+86 755) 8831 9191
E-Mail: lianjie@zlwd.com

Attorneys for Plaintiff
800 COLUMBIA PROJECT COMPANY, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 800 COLUMBIA PROJECT COMPANY, LLC, a Washington limited liability company;<br><br>    Plaintiff,<br><br>  v.<br><br>CMB WING LUNG BANK, LTD., a Hong Kong bank doing business in California;  and  DOES  1  to  100, inclusive;<br><br>    Defendant. | Case No. 8:21-cv-00278-JLS-ADS<br><br>[Assigned to the Hon. Josephine L. Staton]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY OF JAMES KREIG; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hearing Information:**<br>**Date:** December 16, 2022<br>**Time:** 10:30 a.m.<br>**Place:** 1st Street U.S. Courthouse<br>350 West First Street<br>Los Angeles, California<br>Courtroom 8A<br><br>Complaint filed: February 11, 2021<br>FAC filed:  April 20, 2021 |

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

66985655;2

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES......................................1

I.      INTRODUCTION.............................................................................1

II.     SUMMARY OF KREIG'S EXPERT OPINION .............................2

III.    LEGAL STANDARD........................................................................2

        A.      Experts Must Be Qualified to Testify On the
                Designated Topics and Their Methods Reliable...................2

                (a)     the expert's scientific, technical, or other
                        specialized knowledge will help the trier of fact
                        to understand the evidence or to determine a
                        fact in issue;.................................................................2

                (b)     the testimony is based on sufficient facts or
                        data; ...............................................................................2

                (c)     the testimony is the product of reliable
                        principles and methods; and.......................................2

                (d)     the expert has reliably applied the principles
                        and methods to the facts of the case...........................2

IV.     ARGUMENT ....................................................................................5

        A.      Kreig's Testimony Regarding the UCC and the CCC
                and Their Interpretation is Improper Expert
                Testimony. .................................................................................5

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

i

B.  Commercial Reasonableness of Security Procedures is a Matter of Law and Kreig's Legal Conclusions as to Commercial Reasonableness are Improper. ..........................7

C.  Kreig's Contract Interpretation as to the Legal Effect of the GAIA Should Be Stricken as Improper Contract Interpretation and as Erroneous Statements of Law............11

D.  Kreig is Not Qualified to Opine on Matters Included in His Expert Reports............................................................14

E.  Kreig's Methodology Was Not Reliable for Determining Commercial Reasonableness of CMB's Security Procedures or Whether CMB Met the Applicable Standard of Care................................................15

V.  CONCLUSION ...............................................................................18

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

ii

66985655;2

1

# TABLE OF AUTHORITIES

2

<u>Page(s)</u>

3

**Cases**

4

*A.W. v. Lancaster Cnty. Sch. Dist. 0001*,
5
   280 Neb. 205, 784 N.W.2d 907 (2010) ..........................................................7

6

*Aguilar v. Int'l Longshoremen's Union Loc. No. 10*,
7
   966 F.2d 443 (9th Cir. 1992) ........................................................................11

8

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
9
   738 F.3d 960 (9th Cir. 2013) ........................................................................15

10

*Am. Online, Inc. v. St. Paul Mercury Ins. Co.*,
11
   207 F. Supp. 2d 459 (E.D. Va. 2002),
   *aff'd*, 347 F.3d 89 (4th Cir. 2003) ...............................................................13

12

*Bammerlin v. Navistar Int'l Transp. Corp.*,
13
   30 F.3d 898 (7th Cir. 1994) ...........................................................................7

14

*Casper v. SMG*,
15
   389 F. Supp. 2d 618 (D.N.J. 2005) ...............................................................12

16

*CFM Commc'ns, LLC v. Mitts Telecasting Co.*,
17
   424 F. Supp. 2d 1229 (E.D. Cal. 2005) ..........................................................6

18

*Choice Escrow & Land Title, LLC v. BancorpSouth Bank*,
19
   754 F.3d 611 (8th Cir. 2014) ..........................................................................8

20

*DCS Mktg., Inc. v. Homer Laughlin China Co.*,
21
   No. SACV090144.............................................................................................12

22

*Dodge v. Cotter Corp.*,
   328 F.3d 1212 (10th Cir. 2003) .......................................................................3

23

*Est. of Sowell v. United States*,
24
   198 F.3d 169 (5th Cir. 1999) ..........................................................................5

25

*Est. of Stuller v. United States*,
26
   811 F.3d 890 (7th Cir. 2016) .....................................................................2, 14

27

28

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

iii

*Grabowski v. Bank of Bos.*,
 997 F. Supp. 111 (D. Mass. 1997)...................................................................13

*GuideOne Mut. Ins. Co. v. Daniel*,
 No. 7:13-CV-126 (HL), 2015 WL 5190853 (M.D. Ga. Sept. 4, 2015).........13

*Hangarter v. Provident Life & Acc. Ins. Co.*,
 373 F.3d 998 (9th Cir. 2004) ...........................................................................4

*Hardeman v. Monsanto Co.*,
 997 F.3d 941 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2834 (2022) ...............3

*Hatch v. Maine Tank Co.*,
 666 A.2d 90 (Me. 1995) ....................................................................................8

*Herman v. Seaworld Parks & Ent., Inc.*,
 320 F.R.D. 271 (M.D. Fla. 2017) ....................................................................12

*Holman Enterprises v. Fid. & Guar. Ins. Co.*,
 563 F. Supp. 2d 467 (D.N.J. 2008)...................................................................4

*In re Est. of Ohrt*,
 516 N.W.2d 896 (Iowa 1994)............................................................................7

*In re Ford Tailgate Litig.*,
 No. 11-CV-02953-RS, 2015 WL 7571772 (N.D. Cal. Nov. 25, 2015) ...........5

*In re Initial Pub. Offering Sec. Litig.*,
 174 F. Supp. 2d 61 (S.D.N.Y. 2001) ............................................................4, 5

*In re TMI Litig.*,
 193 F.3d 613 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000) ............3

*Karlo v. Pittsburgh Glass Works, LLC*,
 849 F.3d 61 (3d Cir. 2017) ...............................................................................3

*Loeb v. Hammond*,
 407 F.2d 779 (7th Cir. 1969) ..........................................................................11

*Marx & Co.*,
 550 F.2d at 508–10 ..........................................................................................12

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

66985655;2

*Marx & Co., Inc. v. Diners' Club Inc.*,
   550 F.2d 505 (2d Cir. 1977) .........................................................................10

*McHugh v. United Serv. Auto. Ass'n*,
   164 F.3d 451 (9th Cir. 1999) ...................................................................5, 11

*McMahan Sec. Co. L.P. v. FB Foods, Inc.*,
   No. 8:04-CV-1791-T-24TGW, 2007 WL 473666
   (M.D. Fla. Feb. 8, 2007) ...............................................................................12

*Mola Dev. Corp. v. United States*,
   516 F.3d 1370 (Fed. Cir. 2008) ....................................................................10

*Montgomery v. Aetna Cas. & Sur. Co.*,
   898 F.2d 1537 (11th Cir. 1990) .....................................................................12

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008) ...............................................................passim

*Nieves-Villanueva v. Soto-Rivera*,
   133 F.3d 92 (1st Cir. 1997) .......................................................................5, 10

*Oddi v. Ford Motor Co.*,
   234 F.3d 136 (3d Cir. 2000) ............................................................................3

*Patco Const. Co. v. People's United Bank*,
   684 F.3d 197 (1st Cir. 2012).............................................................................8

*Phillips v. Harris*,
   643 So. 2d 974 (Ala. 1994)...............................................................................7

*PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*,
   291 F. App'x 40 (9th Cir. 2008) .....................................................................11

*Price v. Taylor*,
   251 Va. 82, 466 S.E.2d 87 (1996) ..................................................................11

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010), *as amended* (Apr. 27, 2010)..........................15

*PSB Indus., Inc. v. Costanzo's Welding, Inc.*,
   276 F.R.D. 184 (W.D. Pa. 2011) ......................................................................3

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

v

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
   752 F.3d 807 (9th Cir. 2014) ...................................................................15

*Ross v. Rothstein*,
   92 F. Supp. 3d 1041 (D. Kan. 2015) ........................................................9

*Schmidt v. Omaha Pub. Power Dist.*,
   245 Neb. 776, 515 N.W.2d 756 (1994) ....................................................7

*Specht v. Jensen*,
   853 F.2d 805 (10th Cir. 1988) .............................................................4, 5

*Squires ex rel. Squires v. Goodwin*,
   829 F. Supp. 2d 1041 (D. Colo. 2011) .....................................................3

*Staten v. Superior Ct.*,
   45 Cal. App. 4th 1628, 53 Cal. Rptr. 2d 657 (1996) ...............................9

*United States v. Brodie*,
   858 F.2d 492 (9th Cir. 1988) ...................................................................4

*United States v. Caputo*,
   374 F. Supp. 2d 632 (N.D. Ill. 2005) .......................................................8

*United States v. Crockett*,
   435 F.3d 1305 (10th Cir. 2006) ...............................................................5

*United States v. Frantz*,
   No. CR 02-01267(A)-MMM, 2004 WL 5642909
   (C.D. Cal. Apr. 23, 2004) ........................................................................6

*United States v. Morales,*
   108 F.3d 1031 (9th Cir. 1997) (en banc)..........................................4, 10, 13

*United States v. Portis*,
   No. CR 16-134, 2018 WL 447479 (E.D. La. Jan. 17, 2018)......................3

*United States v. Posado*,
   57 F.3d 428 (5th Cir. 1995) .....................................................................3

*United States v. Stewart*,
   433 F.3d 273 (2d Cir. 2006) ....................................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**AKERMAN LLP**
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

vi

66985655;2

*United States v. Weitzenhoff*,
  35 F.3d 1275 (9th Cir. 1993) ..................................................................4, 10

*Villa v. Heilmann*,
  162 Vt. 543, 649 A.2d 768 (1994).................................................................7

**Statutes**

California Commercial Code § 11202 ...............................................................5

California Commercial Code § 11202(a) ......................................................6, 14

California Commercial Code § 11202(b) ..........................................................6

California Commercial Code § 11202(c) .................................................7, 15, 16

California Commercial Code § 11202(f) ...........................................................13

California Commercial Code § 11203 ...............................................................5

Kansas Uniform Commercial Code ...................................................................9

Uniform Commercial Code ..............................................................................5

**Rules**

Fed. R. Evid. 403 ...........................................................................................1

Fed. R. Evid. 702 ...................................................................................passim

Local Rule 7-3...............................................................................................8

**Other Authorities**

*Testimony on the Law*, 40 U ..........................................................................4

**AKERMAN LLP**
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

vii

1

2

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3

4

5

6

7

8

9

PLEASE TAKE NOTICE that on December 16, 2022 at 10:30 a.m., or on such date as may be specified by the Court, in the Courtroom of the Honorable Judge Josephine L. Staton, United States District Court for the Central District of California, First Street United States Courthouse, 350 West First Street, Los Angeles, California, Courtroom 8A, 8th Floor, Plaintiff 800 Columbia Project Company, LLC, will, and hereby does, move the Court for an Order excluding the testimony of James Kreig for any use in this matter.

10

11

12

13

14

Submitted herewith in support of Plaintiff's Motion to Exclude Testimony of James Kreig are: (**1**) the Memorandum in Support of Plaintiff's Motion to Exclude Testimony of James Kreig; (**2**) the Proposed Order Granting Plaintiff's Motion to Exclude Testimony of James Kreig; and (**3**) the Declaration of Ellen Robbins and exhibits thereto.

15

16

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on various dates, the most recent of which was October 18, 2022.

17

18

Dated:  October 28, 2022

**AKERMAN LLP**

19

20

By:   */s/ Ellen S. Robbins*

21

22

Ellen S. Robbins
Alicia Y. Hou
Jonathan M. Turner
Attorneys for Plaintiff
800 Columbia Project, LLC

23

24

25

26

27

28

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

66985655;2

AKERMAN LLP

601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant CMB Wing Lung Bank, Ltd. (**Bank** or **CMB**) has proffered attorney James J. Kreig (**Kreig**) as a purported "standard banking practice" expert in this lawsuit in defense of Plaintiff 800 Columbia Project Company, LLC's (**800 Columbia** or the **Company**) claims against CMB for violation of the California Commercial Code (**CCC**). The report and anticipated testimony of Kreig should be excluded under Fed. R. Evid. 702 and 403 on the grounds that: (1) his proffered opinions are entirely legal conclusions and improper in speaking to the ultimate issue of law; (2) he is not qualified as an expert in "standard banking practice" as his sole experience is as a lawyer, and he has not even attempted to opine on "industry standard of banking practices;" and (3) his opinions are not based on sufficient facts or data because he failed to conduct a proper investigation of the Bank's security procedures in forming his legal opinions. Indeed, Kreig's proffered testimony is pure legal opinion—it does not speak at all to industry standard in banking, nor is it supported by sufficient facts or data. Instead, Kreig plays the role of a lawyer or judge as he cites and interprets case law and provisions of the Uniform Commercial Code (**UCC**), as adopted by the CCC, to opine on the ultimate issue of law [1]—that in his view the Bank's security procedures are commercially reasonable.   This is exactly the type of expert testimony that is inappropriate, impermissible and prejudicial.

The Expert Report of James J. Kreig dated March 31, 2022 (the **Kreig Opinion**) and opinions rendered in his deposition testimony invade the province of the Court, make erroneous statement of law, and are prejudicial to the jury. Kreig's testimony should be excluded under Fed. R. Evid. 403 and 702.

---

[1] Significantly, the Court did an extensive analysis of this issue in its Order on the Bank's Motion for Summary Judgment [Dkt. 83.]

66985655;2

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## II.     SUMMARY OF KREIG'S EXPERT OPINION

Kreig's anticipated testimony addresses the following topics, among others: (1) Kreig's interpretation of the CCC and UCC statutes; (2) Kreig's legal opinion as to the ultimate issue of law, whether the Bank's security policies are commercially reasonable under the CCC; (3) Kreig's legal opinion as to the contract interpretation and legal effect of the General Authorization and Indemnity Agreement (**GAIA**); and (4) Kreig's legal opinion as to whether the GAIA is an impermissible waiver under the CCC. (Declaration of Ellen Robbins (**Robbins Decl.**), ¶ 3.)

## III.    LEGAL STANDARD

### A.     Experts Must Be Qualified to Testify On the Designated Topics and Their Methods Reliable.

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)     the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Even extensive experience in a related subject is not necessarily sufficient to qualify as an expert. In *Est. of Stuller v. United States*, 811 F.3d 890, 895 (7th Cir. 2016), a proffered expert with fifty years of experience in training and breeding horses, was found not to have expertise in the financial and business aspects of running a horse-breeding operation where he did not breed horses to make money, it had been years since he sold a horse that he had bred, and his income was largely derived from training horses.

Further, "Rule 702's reliability threshold requires expert testimony to be 'based on the methods and procedures of science, not on subjective belief and unsupported

2

speculation.'" *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80–81 (3d Cir. 2017)(quoting *In re TMI Litig.*, 193 F.3d 613, 703–04 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000)). Courts look for rigor, not mere "haphazard, intuitive inquiry." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 156 (3d Cir. 2000). Yet admissibility is not based on whether an expert's "opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research." *Karlo*, 849 F.3d at 81. Rather, "the court looks to whether the expert's testimony is supported by 'good grounds.'" *Id.*; *Hardeman v. Monsanto Co.*, 997 F.3d 941, 962 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2834 (2022). While absolute certainty is not required, experts must base their opinions on facts that enable the expert to express a reasonably accurate conclusion, as opposed to conjecture or speculation.[2] "The party asserting the admissibility of the proffered [expert] testimony has the burden to demonstrate by a preponderance of the evidence that the opinions are based on good grounds." *PSB Indus., Inc. v. Costanzo's Welding, Inc.*, 276 F.R.D. 184, 186–87 (W.D. Pa. 2011).

## B. An Expert Cannot Opine as to His Legal Opinion or to the Ultimate Issue of Law.

An "expert witness cannot give an opinion as to her *legal conclusion,* i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (citing *Hangarter v. Provident Life*

---

[2] *United States v. Portis*, No. CR 16-134, 2018 WL 447479, at *1 (E.D. La. Jan. 17, 2018), quoting *United States v. Posado*, 57 F.3d 428, 432–36 (5th Cir. 1995); *see also Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1053 (D. Colo. 2011) (noting that "expert opinions must be based on facts which enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation") (citing *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003)).

AKERMAN LLP

601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

66985655;2

AKERMAN LLP

601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

*& Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)) (internal citations and quotation marks omitted); *see also* Fed. R. Evid. 702 (requiring that expert opinion evidence "assist the trier of fact to understand the evidence or to determine a fact in issue"). "Resolving doubtful questions of law is the distinct and exclusive province of the trial judge." *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993) (internal quotation marks omitted); *see also United States v. Brodie,* 858 F.2d 492, 496–97 (9th Cir. 1988), *overruled on other grounds by United States v. Morales,* 108 F.3d 1031, 1033 (9th Cir. 1997) (en banc).

The principle that legal opinion evidence concerning the law is inadmissible is "so well-established that it is often deemed a basic premise or assumption of evidence law- a kind of axiomatic principle." *Holman Enterprises v. Fid. & Guar. Ins. Co.*, 563 F. Supp. 2d 467, 472 (D.N.J. 2008); *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (quoting Baker, *The Impropriety of Expert Witness Testimony on the Law*, 40 U. Kan. Law Rev. 325, 352 (1992)). The rule regarding legal testimony has been stated as follows:

> A witness cannot be allowed to give an opinion on a question of law … In order to justify having courts resolve disputes between litigants, it must be posited as an a priori assumption that there is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge … To allow anyone other than the judge to state the law would violate the basic concept.

*Specht v. Jensen,* 853 F.2d 805, 807 (10th Cir. 1988) (citation omitted).  Courts have held that expert testimony by lawyers, law professors, and others concerning legal issues

4

66985655;2

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1   is improper.[3] "[T]he judge's expert knowledge of the law makes any such assistance at

2   best cumulative, and at worst prejudicial." *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d

3   92, 100 (1st Cir. 1997); *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir.

4   1999); *Est. of Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999).   Accordingly,

5   federal courts typically prohibit lawyers, professors, and other experts from interpreting

6   the law for the court or from advising the court about how the law should apply to the

7   facts of a particular case. Testimony "which articulates and applies the relevant law …

8   circumvents the [fact finder's] decision-making function by telling it how to decide the

9   case." *Specht*, 853 F.2d at 808.

10  **IV.   ARGUMENT**

11      **A.   Kreig's Testimony Regarding the UCC and the CCC and Their**

12          **Interpretation is Improper Expert Testimony.**

13        There is no basis under the Federal Rules of Evidence for allowing an "expert" to

14  recite to the jury the contents of federal statutes—the Uniform Commercial Code, as

15  adopted by the California Commercial Code are regulations and statutes that speak for

16  themselves. Moreover, testimony as to the legal meaning and effect of regulations and

17  statutes, such as the UCC, as adopted CCC Sections 11202 and 11203, and the

18  requirements under each is not a proper subject of expert testimony and must also be

19  excluded. *See, e.g., In re Ford Tailgate Litig.*, No. 11-CV-02953-RS, 2015 WL 7571772,

20  at *8 (N.D. Cal. Nov. 25, 2015) (citation omitted) (noting that the meaning of federal

21

22  ───────────────

   [3] *See*, *e.g., United States v. Crockett*, 435 F.3d 1305 (10th Cir. 2006) (witness cannot be

23  permitted to define the law of the case); *United States v. Stewart*, 433 F.3d 273 (2d Cir.

24  2006) (court correctly prevented securities law expert from testifying about legality of

25  stock trade); *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y.

26  2001) (stating that "every circuit has explicitly held that experts may not invade the

27  court's province by testifying on issues of law.").

28

66985655;2

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

regulations is not a question of fact, to be resolved by the jury after a battle of experts, but it is a question of law, to be resolved by the court).

Throughout the Kreig Opinion, Kreig opines as to the meaning and effect of the provisions of the CCC:

- "Under the Agreement, the three payment order at issue were the authorized payment orders of the Plaintiff within the meaning of Section 11202(a) of the CCC by Plaintiff under Section 11202(a) as the authorized payment." *See* Robbins Decl. ¶ 4, attaching as Exhibit 1 Kreig Opinion at 16.

- "If a bank can take a loss from an unauthorized payment order that would otherwise under Section 11202(b) fall on the customer, and a bank and customer can by agreement can divide any loss as set forth in an agreement between the parties, there is no public policy reason that should prevent a sophisticated commercial customer from entering into an agreement with its bank that the customer – and not the bank – will accept the risk of loss resulting from the hacking of its email system or its computer systems." *Id.* at 20-21.

- "Therefore, it is not unreasonable or contrary to Division 11 for a large sophisticated commercial customer such as the Plaintiff in this case to accept the risk of loss from the hacking of its email systems as the Plaintiff – and the Plaintiff alone - is in the best position to prevent it." *Id.* at 22.

Because Kreig's opinions as to the meaning, interpretation, and legal effect of the CCC are improper, they should excluded in their entirety. *See CFM Commc'ns, LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1233 (E.D. Cal. 2005) (excluding testimony of proposed expert as to meaning and application of the FCC's regulations); *see also United States v. Frantz*, No. CR 02-01267(A)-MMM, 2004 WL 5642909, at *23 (C.D. Cal. Apr. 23, 2004) (finding that expert's testimony as to legal interpretation of the Code and Treasury Regulations is impermissible).

6

66985655;2

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**B.**     **Commercial Reasonableness of Security Procedures is a Matter of Law and Kreig's Legal Conclusions as to Commercial Reasonableness are Improper.**

Section 11202(c) of the CCC explicitly states the issue of whether a particular security procedure is "commercially reasonable" is a question of law. Cal. Com. Code § 11202(c) (West). Courts have consistently stricken expert testimony on issues that are questions of law. *See Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898 (7th Cir. 1994) (excluding expert testimony regarding compliance with Federal Motor Vehicle Safety Standards; the meaning of federal regulations is a question of law, not a question of fact).[4] As follows, an expert can speak to what security procedures would in his or her opinion meet the level of industry standard, but not whether the Bank's security

---

[4] *Phillips v. Harris*, 643 So. 2d 974 (Ala. 1994) (A linguistics expert who had a Ph.D. in English and ten years' experience as an editor could not testify that two provisions in the deed at issue created an inherent ambiguity, since the threshold issue as to whether a deed is ambiguous is a question of law.); *Schmidt v. Omaha Pub. Power Dist.*, 245 Neb. 776, 515 N.W.2d 756 (1994), *abrogated by A.W. v. Lancaster Cnty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010)(trial court properly struck the testimony of an electrical engineer stating that in his opinion the defendants had a duty to warn plaintiff of the presence of the secondary line since that testimony involved matters that were questions of law); *Villa v. Heilmann*, 162 Vt. 543, 649 A.2d 768 (1994) (the trial court did not err in excluding testimony from a law professor who would have explained why the ethical prohibition on fee splitting by unassociated attorneys did not apply to the fee agreement at issue, since this was a question of law); *In re Est. of Ohrt*, 516 N.W.2d 896 (Iowa 1994) (In a dispute over an estate, the testimony of an attorney interpreting the wills and an intervening family settlement of a will contest was improperly admitted since such testimony constituted opinions on questions of law.)

7

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

procedures were commercially reasonable under the CCC. *See Nationwide Transport Finance*, 523 F.3d at 1058; *Hatch v. Maine Tank Co.*, 666 A.2d 90 (Me. 1995) (in a product liability case, the court allowed plaintiff's expert to testify that the pump was the cause of the explosion but properly precluded him from using the term "proximate cause" since that was a legal conclusion.).[5] Importantly, this Court emphasized in its Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment dated 9/19/22 [ECF 83] (the **MSJ Order**) that "[e]xpert testimony on prevailing banking industry standards will be particularly instructive for the Court's assessment of whether such a security procedure is commercially reasonable." (ECF 83 at p. 26.)

Of note, this Court specifically requested expert testimony on industry standards, *not* on the meaning of the CCC or the ultimate legal question as to whether the Bank's security procedure is commercially reasonable. But Kreig does not provide *any* expert opinion on prevailing industry standards as requested by the Court. Instead, Kreig solely provides legal opinion by interpreting the CCC and citing case law to opine on the ultimate legal question—whether the Bank's security procedure is commercially reasonable. *See* Robbins Decl. ¶ 4, Kreig Opinion at 23, 28-30 (citing *Patco Const. Co. v. People's United Bank*, 684 F.3d 197 (1st Cir. 2012) and *Choice Escrow & Land Title, LLC v. BancorpSouth Bank*, 754 F.3d 611 (8th Cir. 2014) in interpreting the CCC to conclude as to the ultimate legal question of commercial reasonableness).

Indeed, the Kreig Opinion is replete with statements as to the ultimate legal conclusion but devoid of any helpful guidance "on prevailing banking industry standards" that was requested by the Court. For example, Kreig opines that "it is

---

[5] *United States v. Caputo*, 374 F. Supp. 2d 632 (N.D. Ill. 2005) (government's expert could give opinion about safety testing of medical device and that notice was inadequate to warn purchasers of risks but could not opine whether defendants complied with federal statute or were materially misleading within meaning of statute or regulation).

8

66985655;2

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

commercially reasonable to place the risk of an unauthorized use of an authorized signature sent to the bank by electronic means on the Plaintiff" and that the Bank's "'dual control' signature requirement in [his] opinion constitutes a commercially reasonable layered security procedure under Division 11 of the CCC." *See* Robbins Decl. ¶ 4 , Kreig Opinion at 20 and 27; *see also* Robbins Decl. ¶ 5 attaching as Exhibit 2 Deposition Excerpts of James J. Kreig dated May 17, 2022 (**Kreig Depo.**), at 105:4-8. He further opines that "[t]he agreed-upon call back procedure for payment orders in excess of $1 million, coupled with the dual control requirement for two signatures on all Remittance Applications submitted by the Plaintiff to CMB in [his] professional opinion results in a commercially reasonable security procedure." *See* Robbins Decl. ¶ 4, Kreig Opinion at 30.  This is an improper opinion on a question of law that sets forth legal conclusion by applying the law to the facts. *See Nationwide Transport Finance*, 523 F.3d at 1056–1059 (holding that an expert's legal conclusions as to how the UCC applied to the facts of the case were inadmissible, affirming district court's striking of portions of expert report that "discuss the law and its application" and precluding expert from testifying at trial on the law or its application and "directly applying the UCC and other law to the facts of the case"); *Ross v. Rothstein*, 92 F. Supp. 3d 1041, 1074 (D. Kan. 2015) (holding that it would be improper for the Court to allow Underwood's opinion that the OTCQB is a "recognized market," as that term is used in Kansas Uniform Commercial Code ("UCC") and emphasizing that "[t]his is an opinion on a question of law and articulates a legal conclusion drawn by applying the law to the facts.").[6]

The Ninth Circuit has consistently stricken legal conclusions that discuss the law and its application as "[r]esolving doubtful questions of law is the distinctive and

---

[6] *Staten v. Superior Ct.*, 45 Cal. App. 4th 1628, 53 Cal. Rptr. 2d 657 (1996) (inadmissible opinion on a legal question, since "inherent risk" defines the duty owed and duty is a legal question on which expert testimony is not permitted).

9

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1  exclusive province of the trial judge." *Nationwide Transport Finance*, 523 F.3d at 1058

2  (affirming district court's exclusion of legal explanations and conclusions of the expert:

3  (1) sections that discussed the UCC and/or apply the UCC to the facts of the case; (2)

4  sections that discussed non-UCC law and/or apply non-UCC law to the facts of the case;

5  (3) sections that discussed agency law and/or applied agency law to the facts of the case;

6  (4) sections that discussed the parties' legal rights, duties, and obligations under the law;

7  (5) sections that labeled the parties' actions as "wrongful" or "intentional" under the law;

8  and (6) sections that discussed the appropriate formula to calculate damages under the

9  law.) (citing *Weitzenhoff*, 35 F.3d at 1287 (internal quotation marks omitted); *see also*

10  *Brodie*, 858 F.2d at 496–97 *overruled on other grounds by United States v. Morales,* 108

11  F.3d 1031, 1033 (9th Cir. 1997) (en banc). Testimony by lawyers such as Kreig that

12  solely sets forth case law interpretation and legal conclusions encroaches upon the role

13  of the Court and is not only unhelpful, but prejudicial to the jury. *Nieves-Villanueva*, 133

14  F.3d at 100.

15       The judge is the sole arbiter of the law and its application to the facts. *See  Marx*

16  *& Co., Inc. v. Diners' Club Inc.,* 550 F.2d 505, 508–11 (2d Cir. 1977) (court erred in

17  permitting a lawyer to offer his opinions concerning securities law and the application

18  of that law to the contract in dispute.); *Mola Dev. Corp. v. United States*, 516 F.3d 1370

19  (Fed. Cir. 2008) (proper interpretation of agency regulations is an issue of law; expert

20  testimony should not be received, much less considered).[7] Because Kreig repeatedly

21  speaks to the ultimate legal question—whether CMB's security procedures are

22  commercially reasonable—his opinions invade the province of the Court and are not

23  properly admissible as expert testimony.

24

25

26  _____

27

28                                   10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**C.    Kreig's Contract Interpretation as to the Legal Effect of the GAIA Should Be Stricken as Improper Contract Interpretation and as Erroneous Statements of Law.**

In addition to improperly opining on the meaning of the relevant CCC provisions, Kreig also improperly opines on the legal effect of the GAIA. *See PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 291 F. App'x 40, 41 (9th Cir. 2008) ("The expert testimony proffered ... went to the interpretation of the underlying settlement agreement, a contract, an ultimate question of law upon which the opinion of an expert may not be given.").  "Contract interpretation is a question of law, and thus inappropriate subject matter for expert opinion." *McHugh*, 164 F.3d at 454.[8] Notably, this Court has already provided its view on the validity and impact of the GAIA in its Summary Judgment Order, so Kreig's opinion is moot.

Expert testimony by an attorney such as Kreig that opines as to the legal effect of documents is not permissible and routinely excluded by courts. *See Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443 (9th Cir. 1992) (district court properly rejected testimony from an alleged expert in employment application interpretation that the workers reasonably relied on promises made in employment application instructions and that such reliance should have been foreseen by the defendants, since these were matters of law for the court's determination and thus were not appropriate subjects for expert testimony.).[9]

---

[8] *Price v. Taylor*, 251 Va. 82, 466 S.E.2d 87 (1996) (In a contract action it was error to have admitted testimony from three attorneys that the contract in question was valid on its face because it recited legally adequate consideration, since this testimony constituted conclusions of law).

[9] See *Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969) (affirming ruling that attorney's expert testimony as to legal significance of terms in documents was

11

AKERMAN LLP

601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Kreig's deposition testimony underscores that his opinions are based on his interpretations or the law and his experience as a lawyer:

> Q.     On page 22 of your report, Mr. Kreig, you state that the agreement – quote, the agreement acts as an estoppel preventing the Plaintiff from disclaiming authenticity of the three types of payment orders.  Do you recall that?
>
> A.     Yes, that's the – yes, that's the lawyer in me talking.
>
> …
>
> Q.     And what's that opinion based on?
>
> A.     Forty-eight years off and on handling disputes with customers with 13 years of trial experience litigating disputes between banks and their customers, 28 years of expert experience, and probably reading more court decisions than I can possibly remember.

Robbins Decl. ¶ 5, Kreig Depo. 108:15-21; 109:11-17. Kreig's opinion should be stricken from the record as improper legal contract interpretation. *DCS Mktg., Inc. v. Homer Laughlin China Co*., No. SACV090144 DOCMLGX, 2009 WL 10674051, at *3 (C.D. Cal. Nov. 5, 2009) (court refused to allow testimony of expert as to application of contract and the parties rights and obligations under the contract terms).[10]

---

inadmissible); *Marx & Co.*, 550 F.2d at 508–10 (reversing district court based on erroneous admission of expert testimony by lawyer as to various legal obligations under contract); *Casper v. SMG*, 389 F. Supp. 2d 618 (D.N.J. 2005) (professor of law and economics precluded from testifying that labor agreement constituted anti-trust violation).

[10] *Herman v. Seaworld Parks & Ent., Inc.,* 320 F.R.D. 271, 282–83 (M.D. Fla. 2017) (striking expert report pursuant to Fed. R. Evid. 702 on the basis that it constitutes an improper legal conclusion of the ultimate contract interpretation issue in this suit); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 n. 9 (11th Cir. 1990) (noting that interpretation of contracts is a question of law to be decided by the judge); *McMahan Sec. Co. L.P. v. FB Foods, Inc.*, No. 8:04-CV-1791-T-24TGW, 2007 WL 473666, at *2

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

In addition to the impropriety of Kreig's statements as to the legal effect of the GAIA, Kreig's statements also constitute erroneous statements of law. *Nationwide Transport Finance*, 523 F.3d at 1058 ("Zadek's legal conclusions not only invaded the province of the trial judge, but constituted erroneous statements of law. In such a case, '[e]xpert testimony … would have been not only superfluous but mischievous.'") (citing *Brodie*, 858 F.2d 492). Within its judicial province, this Court has set forth its interpretation of CCC § 11202(f), emphasizing that "[t]he GAIA cannot redefine what constitutes an 'authorized order' in the electronic communication context as any order it believes to be genuine and thereby release CMB WLB from responsibility to use commercially reasonable security procedures in the verification and processing of payment order." MSJ at 14 (citing *Grabowski v. Bank of Bos.*, 997 F. Supp. 111, 120 (D. Mass. 1997). According to this Court, if enforced as written, the GAIA "would eviscerate the statutory definition of an 'authorized order' and impermissibly broaden the only acceptable exception for the validation of unauthorized orders that the statute contemplates." *Id.* This Court explicitly concluded that "[a] payment order that neither originated from a customer or its agents nor was tested according to a security procedure

---

(M.D. Fla. Feb. 8, 2007) (excluding an expert's opinion on the interpretation of a contract, noting "[g]enerally speaking, interpretation of a written contract is a matter of law to be determined by the court"); *GuideOne Mut. Ins. Co. v. Daniel*, No. 7:13-CV-126 (HL), 2015 WL 5190853, at *1 (M.D. Ga. Sept. 4, 2015)("[t]he Court further finds that the expert testimony proffered by Defendants is not helpful to the Court's interpretation of the contract language at issue and grants Plaintiff's motion to exclude the testimony of Defendants' expert witness"); *Am. Online, Inc. v. St. Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459, 466 (E.D. Va. 2002), *aff'd*, 347 F.3d 89 (4th Cir. 2003) ("It is typically improper for a court to rely on expert testimony for purposes of interpreting the terms and clauses of a contract.").

66985655;2

**AKERMAN LLP**
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1  cannot be an 'authorized order' under the California Commercial Code" and further held

2  that "the GAIA cannot render the three fraudulent wire transfers authorized orders under

3  the California Commercial Code." MSJ Order at 15.

4  Principally, the Kreig Opinion is in ***direct conflict*** with this Court's ruling. Kreig

5  opines that the GAIA renders the fraudulent wire transfers as "authorized payment orders

6  of the Plaintiff within the meaning of Section 11202(a)" and that the GAIA's "shifting

7  the risk of loss to Plaintiff resulting from allegedly unauthorized signatures on the

8  Remittance Applications sent to CMB via email" was in his opinion "a permitted

9  variation by agreement of the loss allocation rules of Article 4A." *See* Robbins Decl. ¶

10  4, Kreig Opinion at 16, 19; *see also* Robbins Decl. ¶ 5, Kreig Depo. at 96:21 - 97:1-11;

11  109:18 – 110:7. In presenting not only improper legal interpretation but also erroneous

12  statements of law, Kreig's statements should be excluded. *See Nationwide Transport*

13  *Finance*, 523 F.3d at 1058.

14      **D.    Kreig is Not Qualified to Opine on Matters Included in His**

15          **Expert Reports.**

16  Kreig lacks the requisite knowledge, skill, experience, training, or education to

17  properly testify on (1) the commercial reasonableness of CMB's security procedures and

18  whether CMB was met its standard of care in processing the three fraudulent wire

19  transfers at issue; and (2) whether the security procedures used by CMB in connection

20  with the three payment orders were commercially reasonable. Therefore, such testimony

21  is inadmissible.

22  Here, similar to the proffered horse breeding expert in *Estate of Stuller*, 811 F.3d

23  at 895, Kreig's decades of experience as a bank attorney, with some alleged

24  responsibility regarding security of wire transfers, do not translate to operational

25  expertise or knowledge of the practical intricacies of the wire transfer process sufficient

26  to qualify him as an expert.  First, roughly 40 years of Kreig's claimed 48 years of

27  banking experience is almost exclusively as a lawyer or counsel in bank legal

28                                     14

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

departments rather than in an operational capacity. *See, e.g.*, Robbins Decl. ¶ 4 , Kreig Opinion at 38-41. Kreig identified no actual experience processing, approving, and/or accepting orders for wire transfer of any type. Thus, Kreig has minimal real life experience reviewing potential or real banking transactions, or examining transactions for fraud and/or money laundering, which is necessary in order to know the details of the process of any banking transaction, but most importantly fraudulent ones.

Kreig's lack of operational knowledge of the wire transfer process is glaringly apparent from the numerous oversights and inconsistencies in his analysis, as detailed exhaustively in the following section. Given the foregoing, Kreig is not qualified to testify on the matters for which he has been designated.

**E.    Kreig's Methodology Was Not Reliable for Determining Commercial Reasonableness of CMB's Security Procedures or Whether CMB Met the Applicable Standard of Care.**

"An expert opinion is reliable 'if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline.'" *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 816 (9th Cir. 2014) (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010)).). Not only has Krieg failed to establish that he is qualified to opine on the prevailing banking industry standards with respect to security procedures (and indeed, Krieg did not render any opinions on industry standards in either his written report or in his deposition), but Krieg also conceded during his deposition that he lacks a sufficient foundation to testify even as to CMB's security procedures. Shockingly, Kreig failed both to review critical documents regarding CMB's security procedures and to interview CMB's employees who interacted with Plaintiff and participated in the conduct at issue.

For instance, under Section 11202(c) of the CCC, the issue of whether a particular security procedure is "commercially reasonable" is a question of law to be determined

15

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

"by considering the wishes of the customer expressed to the bank, the circumstances of the customer known to the bank, including the size, type, and frequency of payment orders normally issued by the customer to the bank, alternative security procedures offered to the customer, and security procedures in general use by customers and receiving banks similarly situated." Cal. Com. Code § 11202(c). Despite this required analysis, Kreig inexplicably did not obtain basic information about CMB's operations including: how many customers CMB or its Newport Beach branch had; how many wire transfer CMB or its Newport Beach branch processed daily; whether CMB's employee Shasha Tong processed all of Plaintiff's wire transfers; how many customers Ms. Tong was responsible for; or how many CMB employees interacted with Plaintiff. Robbins Decl. ¶ 5, Kreig Depo. at 79:6-80:19. Moreover, Kreig did not review *any* of CMB's policies. Robbins Decl. ¶ 5, Kreig Depo. at 67:11-68:1, 68:11-16.  As demonstrated below, Kreig failed to review any of Plaintiff's remittance applications for wire transfers other than for the three fraudulent wires, even though "the size, type, and frequency of payment orders normally issued by the customer to the bank" is relevant to commercial reasonableness. Cal. Com. Code § 11202(c):

> Q:   Did you see any remittance applications, other than the remittance applications for the three wire transfers at issue in this case?
> A:   I have not.

Robbins Decl. ¶ 5, Kreig Depo. at 142:18-21.

> Q:   Did you review any other transfers in or out of 800 Columbia's account?
> A:   I did not review any other transfers into or out of the account of 800 Columbia beyond the three wire transfers at issue in this case going out and the 5.7 million coming in shortly before the three outgoing wire transfers went out.  It's my belief that the 5.7 million that came into the account of 800 Columbia was the source of the funding of the three wires going back out.

*Id*. at177:4-177:13.

16

66985655;2

Kreig similarly did not know if any 800 Columbia activities were reported to CMB's management as required by CMB's policies and memorialized in its Fraud Control and Reporting Mechanism manual (*Id.*, Exhibit 8):

> Q:    Do you know whether any of 800 Columbia Project's transactions or activities were brought to the attention of CMB's management?
>
> A:    I do not.

*Id.* at 139:11-14.

Perhaps most astonishingly, Kreig did not know what security measures CMB did or did not have in place for wire transfers including:  "device identification" (Robbins Decl. ¶ 5, Kreig Depo. at 132:17-22); "challenge questions" (*Id.* at 132:23-133:3); or any enhanced control over changes to customer accounts (*Id.* at 127:12-25). Kreig also stated that he did not know whether CMB utilized any type of multifactor authentication, which pursuant to the FFEIC Guidance is now industry standard for electronic banking transactions such as wire transfers. *Id.* at 128:9-25; 129:20-130:21.

Furthermore, Kreig did not speak with anyone at CMB Bank about this case or review information regarding the experience and training of CMB employees involved in this matter, including  Shasha Tong, who was the primary point of contact with 800 Columbia for each of the wire transactions:

> Q:    Did you speak with anyone at CMB Bank about this matter?
>
> A:    I did not.

*Id.* at 138:24-139:1.

> Q:    Are you aware of what bank working experience Shasha Tong had?
>
> A:     I have not seen her resumé or her work history, no.
>
> Q:    Are you aware of the work history or experience that any of the CMB Bank employees who interfaced with Columbia 800 Project had?
>
> A:    I am not.

Q:    Are you aware, Mr. Kreig, that Chloe Wang, the vice president and operations officer, was given the title of Assistance Operation's Head after six months of months of banking experience?

A:    I was not aware of that fact, no.

*Id*. at 175:15-176:5.

Indeed, Kreig did not know if Shasha Tong was familiar with 800 Columbia's pattern of wire transfers. *Id*. at 148:11-149:1. Nor did Kreig know which CMB employee(s) verified the signatures on remittance applications from Plaintiff, what CMB did to verify signatures on the remittance applications, or which CMB employee checked the OFAC sanctions list. *Id*. at 145:13-147:2. In fact, although Kreig agreed that the changed remittance destination of Hong Kong was identified as a high risk destination, he did not know what, if anything, CMB did to address that risk. *Id*. at 148:1-6.

Kreig's failure to establish that he is qualified to opine on banking industry standards for security procedures and his use of an unreliable methodology in formulating his opinions on the commercial reasonableness of CMB's security procedures requires that his testimony excluded.

## V.    CONCLUSION

For the reasons set forth above, James Kreig's testimony should be excluded in its entirety.

Dated:  October 28, 2022                  **AKERMAN LLP**

By:    /s/ Ellen S. Robbins
        Ellen S. Robbins
        Alicia Y. Hou
        Jonathan M. Turner
Attorneys for Plaintiff
800 Columbia Project, LLC

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

18

66985655;2